## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE ESTATE OF ESTHER M. HAKE,** | : | **Civil No. 1:15-CV-1382** |
| **RICKY L. HAKE and** | : | |
| **RANDY L. HAKE, Executors,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

In this action, two executors to their late mother's estate have sued the United States seeking abatement and reimbursement of a penalty that was assessed after the executors were late in filing the estate's tax returns.  The executors did not simply neglect to comply with a deadline that was known to them.  To the contrary, the executors filed the return on the date that their tax attorney advised them that it was due, after the estate had been granted extensions of both its filing and payment deadlines.  Indeed, the executors took care to pay the taxes that they believe were owed well before payment was due and in an amount that later proved to be more than $100,000 in excess of what was actually owed.

Nevertheless, the executors unquestionably filed the estate's return approximately six months' late, having been incorrectly advised by tax professionals that the return deadline had also been extended for one year, something that was admittedly inaccurate, and in fact was generally unavailable under governing tax laws and regulations.  For this error the executors were assessed a late penalty in the amount of $197,868.26, and interest of $17,202.44 imposed pursuant to section 6651(a)(1) of the Internal Revenue Code.[1]

There appears to be no real dispute between the executors and the United States that the return was filed on July 2, 2013, and that it was filed on this date because the executors had been advised by tax professionals they had retained that they had been granted a one-year extension to file the return and to pay the taxes owed on the estate.  There is also no dispute between the parties that this advice was incorrect, and that tax law permits only a six-month extension of time to file an estate tax return for domestic executors, whereas it permits up to a one-year extension to pay the taxes owed.   The executors' counsel has candidly acknowledged that the advice he gave his clients was wrong.

The executors pursued an administrative appeal for abatement of the penalty on August 13, 2013.  When that appeal was rejected, the executors paid the entire

---

[1]  Notably, the penalty was offset by the $108,526.97 overpayment that the executors made in February 2013, and thus the Internal Revenue Service demanded a penalty of $106,543.73.

2

balance owed for penalty and interest.  The executors then took steps to secure a refund of the penalty and interest, and exhausted their administrative remedies with the Internal Revenue Service, all of which were unsuccessful.[2]  This litigation followed when the executors filed a complaint on July 15, 2015.

The parties have now filed cross-motions for summary judgment, (Docs. 23, 33), which have been fully briefed and are ripe for disposition.  Upon consideration of the parties' briefs, the unique and undisputed facts of this case, as well as the developing law in this field, the Court finds that the executors' reliance upon the advice of their counsel in these particular circumstances regarding the applicable deadlines for filing the estate's return was reasonable, and, therefore, the imposition of the penalties and interest was not warranted.  In reaching this

---

[2]  As part of their efforts to obtain a refund, the executors, through new counsel, filed a letter requesting abatement of the penalty on January 13, 2014.  In this letter, the executors argued that they had reasonable cause for the late filing because it was the result of legal advice from counsel.  On March 27, 2014, the IRS denied this request.  On May 14, 2014, the executors filed a protest with the Appeals Division, again requesting abatement and refund of the penalty due to reasonable cause.  On December 18, 2014, the IRS initially denied the request, but permitted the executors to provide additional information by January 19, 2015, if desired.  The executors filed additional information on January 15, 2015, including citation to *Estate of Thouron v. United States*, 752 F.3d 311 (3d Cir. 2014), for the proposition that erroneous expert advice of a legal professional constitutes reasonable cause for the failure to file.  The executors supplemented this filing on June 18, 2014, and included an affidavit from tax counsel who attested that he had advised the executors to seek an extension of the time to pay taxes under I.R.C. § 6161 in order to extend the deadline for filing the return and the payment due date, so that both would be due on July 2, 2013.  On March 9, 2015, the IRS denied the appeal.  (Doc. 25 ¶ 20, Doc. 30 ¶20.)

3

conclusion, the Court acknowledges the United States' arguments regarding the application of emerging case law from other courts in this field, but finds that application of authority from the United States Court of Appeals for the Third Circuit to the particular facts of this case compels this outcome.

## II.   **BACKGROUND**

Esther M. Hake died on October 2, 2011.  Two of her sons, Ricky and Randy Hake, were qualified as the executors of her estate pursuant to the grant of Letters Testamentary by the York County Register of Wills on October 31, 2011. At the time of Mrs. Hake's death, she was legally incapacitated and her five surviving children were locked in an intra-family dispute over her care and the value of her assets.  (Dep. of Ricky Hake ("Ricky Dep.") at 10-13 and 20-25; Dep. of Douglas P. France ("France Dep.") at 10-19, 28.)  The dispute among Mrs. Hake's children impaired the ability of Ricky and Randy Hake to administer the estate efficiently, made difficult the process of obtaining appraisals of the family grocery business, and delayed the preparation of the required tax returns.  (Ricky Dep. at 10, 14, 52; France Dep. at 14-19.)  These factors, in turn, led the Hakes to secure, and rely upon, the advice of legal and tax professionals.

There is no dispute that the Hake brothers had no experience with probate law, inheritance taxation, federal estate taxation, or related matters.  (Ricky Dep. at 25-33, 39.)  Accordingly, to assist them in their legal duties, the executors engaged

Douglas P. France of the firm France Paskey as tax professionals and estate attorneys to advise the executors on all tax matters and related estate administration, including the calculation, preparation, payment, and filing of federal taxes and tax returns.  (Ricky Dep. at 5, 13; Dep. of Randy Hake ("Randy Dep.") at 18; France Dep. at 11, 21-22.)  Owing to his longstanding representation of the family and its business affairs, the executors relied on the legal counsel of France and his associate, Jennifer Galloway.  (Ricky Dep. at 5, 13-14; Randy Dep. at 20-21; France Dep. at 70-71.)

Federal tax law provides that an estate-tax return, Form 706, must be filed within nine months of the decedent's death.   26 U.S.C. 6075(a); 26 C.F.R. § 20.6075-1.  Accordingly, the estate's federal tax return and tax payment were due on July 2, 2012.  (Dep. of Ricky Hake at 5, 7, 40; France Dep. at 20-21.)  Although the executors intended to file the taxes and return by this deadline, it became apparent that this would be impossible because of the ongoing family disputes surrounding valuation of the estate's assets.  (Ricky Dep. at 7-8, 51-52; France Dep. at 24-25, 31-34; Dep. of Jennifer Galloway ("Galloway Dep.") at 17-18.)  In order to give them time to resolve these ancillary issues, France advised the executors to seek extensions of time in which to file the return and pay the taxes owed.  (Ricky Dep. at 17, 43; Randy Dep. at 11, 13; France Dep. at 36-37, 87-88.)  Pursuant to the executors' direction, France filed a Form 4768 on June 12, 2012,

seeking extensions of time to file the return and pay the taxes.  (Galloway Dep. at 9; France Dep., Ex. 1.)  France advised the executors to seek the longest extension possible, in part because he did not know what the limits on such an extension were, as he had never before filed for such an extension.  (Ricky Dep. at 19; France Dep. at 37, 83.)  Galloway prepared and filed the Form 4768 and, upon approval, informed France that the deadline to pay the taxes and return had been extended for one year.  (France Dep. at 36-38, 41, 60; Galloway Dep. at 9, 12-16, 20, 25, 41; Ricky Dep. at 46-47, 67.)  France, in turn, informed the executors that they had been granted a one-year extension of the deadlines.  (Ricky Dep. at 55, 68; Randy Dep. at 4, 7, 12; France Dep. at 42, 67, 71.)

France and Galloway's advice was wrong, as Treasury Regulation 26 C.F.R. 20.6081-1 generally limits any extension to file the Form 706 return to six months for executors in the United States.[3]  Indeed, the Form 4768 that Galloway prepared and filed on June 21, 2012, specifically provided for a six-month automatic filing extension and a one-year discretionary payment extension, with the cover letter that accompanied the Form 4768 expressly requesting "an automatic 6 month extension of time to file a Form 706."  (Doc 35 ¶ 18, 20)  Pursuant to this request, the estate's deadline for filing its return was extended until January 2, 2013.  (Id. ¶ 21.)  However, the deadline for payment of taxes had been extended to July 2013.

---

[3]  The regulations permit an extension of up to one year for executors who are abroad.  *Id.*

In fact, the estate made a prepayment of the taxes in the amount of $900,000 on February 12, 2013, some five months prior to this extended tax payment deadline.  This payment, which turned out to be more than $100,000 in excess of the actual tax liability, was accompanied by a letter in which the executors represented that "[w]e have an extension for filing the Return of July 3, 2013. Should you have any questions regarding this return, please contact me immediately."  (Compl., Ex. B.)  The IRS did not contact France or the executors about his inaccurate assertion of the estate's deadline to file its tax return.  (France Dep. at 51-53.)

The estate then filed its return on July 2, 2013, the date the executors were told it was due.  (Ricky Dep. at 22-23, 65; France Dep. at 70-72, 82, 117 and Ex. 3.)  The IRS notified the estate on August 12, 2013, that a penalty in the amount of $197,868.26, and interest in the amount of $17,202.44, had been assessed under section 6651 of the Internal Revenue Code for failure to file a timely return. However, because the estate had overpaid its taxes by $108,526.97, an offset penalty of $106,543.73 was demanded.  (Compl., Ex. D.)

On August 13, 2013, France took the first steps to seek abatement of the penalty, explaining by letter that he had understood the extension of the deadline for paying the taxes applied equally to the deadline for filing the return.  When these efforts and subsequent appeals proved unsuccessful, the executors and France

7

retained the services of new counsel for the estate, which engaged in a protracted administrative review process with the IRS, which was ultimately unavailing. *See* footnote 2, supra. Having exhausted its administrative remedies, the estate filed this action on July 15, 2015, seeking recoupment of the penalty and interest paid.

On September 16, 2016, the estate filed a motion for summary judgment, and on October 6, 2016, the United States filed its cross-motion for summary judgment. The motions are fully briefed. On October 24, 2016, the case was reassigned to the undersigned pursuant to the parties' consent. (Doc. 40)

## III.   **STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, a court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is, therefore, entitled to judgment as a matter of law." *Macfarlan v. Ivy Hill SNF, LLC.*, 675 F.3d 266, 271 (3d Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A disputed issue is only "genuine" if there is a sufficient evidentiary basis upon which a reasonable factfinder could find for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A factual dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (citing *Gray v. York Papers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992)).  The Court is not tasked with resolving disputed issues of fact, but only with determining whether there exist any factual issues that must be tried.  *Anderson*, 477 U.S. at 247-49.

In considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Macfarlan*, 675 F.3d at 271; *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir. 2009).  Where there exist factual issues that cannot be resolved without a credibility determination, the court must credit the non-moving party's evidence over that presented by the moving party.  *Anderson*, 477 U.S. at 255.  However, if there is no factual issue presented, and if only one reasonable conclusion could arise from the record with respect to the potential outcome under the governing law, the court must award summary judgment in favor of the moving party.  Id. at 250.

The standard of review does not change where the parties have filed cross-motions for summary judgment.  *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).  This is because cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an

> agreement that if one is rejected the other is necessarily
> justified or that the losing party waives judicial
> consideration and determination whether genuine issues
> of material fact exist.

*Transportes Forreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001.  If review of cross-motions for summary judgment reveals that there are no genuine issues of material fact to be tried, then judgment may be entered in favor of the party entitled to judgment in light of the law and undisputed facts.  *Iberia Foods Corp. v. Romeo Jr.*, 150 F.3d 298, 302 (3d Cir. 1998).

## IV.   **DISCUSSION**

This case turns on to a single question which comes before us on a specific, unusual, and narrowly defined set of facts:   When an executor relies upon inaccurate advice from legal and tax counsel regarding the extended deadline for filing an estate tax return, in a factual context where determination of filing and payment deadlines are governed by a series of mandatory and discretionary rules which may vary depending upon the residence status of the taxpayer, does that reliance upon professional advice constitute reasonable cause to avoid the assessment of late filing penalties and interest?  On the unique facts of this case, we find that it does.

Pursuant to statute and applicable regulations, an estate tax return generally must be filed with the IRS within nine months after a decedent's death.  26 U.S.C.

§ 6075; 26 C.F.R. § 20.6075-1.  The regulations permit an executor to apply for an automatic six-month extension of time to file the estate tax return by filing a Form 4768 on or before the date the return is due to be filed.  26 C.F.R. § 20.6081-1(b).  Executors may also apply for discretionary extension of time to pay estate taxes "for a reasonable period of time, not to exceed 12 months."  26 C.F.R. § 20.6161-1(a)(1).  Notably, although the IRS "may grant a reasonable extension of time for filing any return," "no such extension shall be for more than 6 months" except in cases of taxpayers who are out of the country.  26 U.S.C. § 6081(a).

Thus, with respect to payment and filing deadlines, the legal terrain requires a subtle multi-faceted analysis.  First, one must determine the initial filing and payment deadlines.  Next one must negotiate a series of deadline extension rules.  Some of these extensions are automatic; others are discretionary.  Further, one must be alert to the fact that the application of these differing rules can lead to different deadlines for payment and filing.  Finally, one must remain mindful of the fact that the filing rules themselves change depending upon the residency status of the executors.

When a taxpayer fails to file a tax return by the due date, including any extension of time for filing, a late penalty applies "unless it is shown that such failure is due to reasonable cause and not due to willful neglect."  26 U.S.C. § 6651(a)(1).  The Supreme Court has instructed that in order to gain the benefit of

11

this exception, an executor bears "the heavy burden of proving . . . that the failure [to timely file the tax return] was 'due to reasonable cause.'"  *United States v. Boyle*, 469 U.S. 241, 245 (1985).  Reasonable cause will excuse a failure to file timely only "[i]f the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time."  26 C.F.R. § 301.6651-1(c)(1).

The Supreme Court's decision in *Boyle* provides further guidance in this area, which the United States Court of Appeals for the Third Circuit has carefully explained in a decision that was handed down at the time these executors were trying in vain to set aside the penalties and interest assessed in this case.  *Estate of Thouron v. United States*, 752 F.3d 311, 314 (3d Cir. 2014).  In *Thouron*, the Third Circuit read *Boyle* to have identified three distinct categories of late-filing cases. In the first category consists of cases that involve taxpayers who delegate the task of filing a return to an agent, only to have the agent file the return late or not at all. *Id.* (citing *Boyle*, 469 U.S. at 249-50).  In *Boyle*, the Supreme Court held that in such cases, reliance upon one's attorney to file a timely tax return was not reasonable cause to excuse the late filing.  *Id.*  The second category of late-filed cases identified in *Boyle,* as that decision is construed by the court of appeals in *Thouron,* is where a taxpayer, in reliance on the advice of an accountant or attorney, files a return after the actual due date, but within the time that the

12

taxpayer's lawyer or accountant advised the taxpayer was available. *Id.* Finally, in the third category are those cases where "an accountant or attorney *advises* a taxpayer on a matter of tax law[.]" *Id.* (quoting *Boyle*, 469 U.S. at 251) (emphasis in *Boyle*).

*Boyle* itself fit squarely into the first category. In that case, Robert Boyle was the executor of his mother's estate, and retained a lawyer on behalf of the estate to assist with tax matters. Boyle relied on the lawyer's instruction and guidance, and although he repeatedly checked with the lawyer about the status of the estate's return, the lawyer "overlooked the matter because of a clerical oversight in omitting the filing date from [his] master calendar." *Id.* at 315 (quoting *Boyle*, 469 U.S. at 243). As a result, the estate's return was filed three months' late. The Supreme Court held that in such circumstances, the executor could not hide behind the oversight of his attorney because executors have a clear obligation to make sure that estate tax returns are filed timely "that cannot be discharged by delegating responsibility to an attorney or accountant." *Id.* (citing *Boyle*, 469 U.S. at 249-50). The Court further found that the executor's reliance on his tax lawyer was not for substantive tax advice, but "for the administrative act of filing the return." Id. (citing *Boyle*, 469 U.S. at 252).

In *Thouron* the United States Court of Appeals for the Third Circuit construed *Boyle* narrowly, and has instructed us that *Boyle* addresses only cases of

"clerical oversight," where a taxpayer has simply relied on a third party to file a return by the prescribed deadline.  In *Thouron*, the court of appeals found that it was presented with distinguishable facts to those at issue in *Boyle*.  *Thouron* involved the administration of a substantial estate following the death of Sir John Thouron at the age of 99.  The executor appointed to administer the estate retained an experienced tax lawyer to advise him.  The estate's tax return and payment were due on November 6, 2007, and on that date the estate requested an extension of time to file the return, and paid $6.5 million, which represented a fraction of what would eventually be owed.  The estate declined to pay the entire balance of its tax liability, or to request an extension of its payment deadline, because its tax lawyer had advised that the estate may be able to defer certain liabilities under other sections of the Internal Revenue Code, in order to pay those liabilities in installments over several years.

As requested, the estate received an automatic extension of the time to file the return, making that return due on May 6, 2008.  Unlike the case before this Court, the estate in *Thouron* filed its return timely but on the same day requested an extension of time to pay, having determined by this point that it would not qualify for deferring payment to a later tax year.  The IRS denied the requested extension and imposed a penalty for failure to pay the tax owed by the deadline. The estate's administrative appeals failed, and it filed a complaint seeking a

14

refund, arguing that its failure to pay was reasonable and not willful neglect, since it was based on substantive advice of counsel.  The district court granted summary judgment in the government's favor, and the Third Circuit vacated the ruling, holding that the case was distinguishable from *Boyle*, and finding that the estate should be permitted to present evidence to show that it should not have been assessed the penalties because of its reasonable reliance on the legal advice of counsel.  752 F.3d at 312-13.

In reaching this determination, the court of appeals took care to note that *Boyle* had recognized a split of authority regarding the second category of cases, where the estate either paid or filed late, but did so by or before the deadline that its lawyer had instructed.  752 F.3d at 315.  Indeed, in observing that the Supreme Court explicitly declined to resolve this dispute in the circuits, the Third Circuit noted that it had previously held that "a taxpayer could show reasonable cause where he or she filed (or paid) before what he or she was erroneously advised was the deadline."  *Id.* (citing *Boyle*, 469 U.S. at 251 n.9); *see also Boyle*, 469 U.S. at 251 n. 9 ("We need not and do not address ourselves to this issue.") (citing *Sanderling, Inc. v. C.I.R.*, 571 F.2d 174 (3d Cir. 1978)).

The Third Circuit also underscored that in the third category of cases where a taxpayer has relied on erroneous advice of tax counsel regarding a question of law, *Boyle* found that "[c]ourts have frequently held that 'reasonable cause' is

established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken." *Id.* (quoting *Boyle*, 469 U.S. at 250). Here too, the Supreme Court noted two Third Circuit decisions that stood for this position. *Boyle*, 469 U.S. at 250 (citing *Hatfried, Inc. v. Commissioner*, 162 F.2d 628, 633-35 (3d Cir. 1947), and *Girard Investment Co. v. Commissioner*, 122 F.2d 843, 848 (3d Cir. 1941)).[4]

*Boyle* plainly holds that where the executor has wholly delegated a clerical or ministerial duty to some third party, the taxpayer may not hide behind the third party's failure to perform the administrative task of filing a return. But we read the *Thouron* to instruct that this is the extent of *Boyle's* holding. Indeed, the Third Circuit expressly noted that *Boyle* "did not rule on when taxpayers rely on the advice of an expert, whether that advice relates to a substantive question of tax law or identifying the correct deadline." *Id.* at 316. Therefore, we are constrained to agree with the executors that the holding in *Boyle*—as construed in *Thouron*—does not compel a ruling in the government's favor in this case.

---

[4]   Indeed, it seems somewhat incongruous that an executor may in some cases reasonably rely upon the erroneous advice of counsel if he is told he need not file a return at all, but would not be excused for relying upon the advice of counsel that a return needed to be filed, and that the deadline for that return had been extended, where the lawyer made a mistake about the date the return was due. In short, the case law would seem to excuse the greater sin of not filing at all while potentially condemning the lesser offense of paying early but filing late.

The United States insists that it is irrelevant whether the plaintiffs wholly delegated their duty to administer the estate to their lawyer, since *Boyle* should be read more broadly for the proposition that the statutory requirement for timely filing a return is solely the duty of the taxpayer, and is non-delegable.  Such an argument, however, invites us to ignore the Third Circuit's instruction that the holding of *Boyle* does not reach the very circumstances of this case, where the executors did not delegate their filing duty to their lawyer, but where they did rely upon their lawyer to advise them when their taxes needed to be paid and their return filed, in addition to assisting them with the legal requirements for administering the estate – something with which they had no familiarity.

To demonstrate that their failure to file a timely return was "due to reasonable cause and not to willful neglect," 26 U.S.C. § 6651(a)(1), the Third Circuit explained that the executors would need to show that they "exercised ordinary business care and prudence and [were] thus nevertheless unable to file the return within the prescribed time[.]"  *Thouron*, 752 F.3d at 314 n.1 (citing Treas. Reg. § 301.6651-1(c)(1)).  The Tax Court has held that reasonable cause may be found to exist when a taxpayer files a return after the due date, but does so in reliance upon an expert's erroneous advice.  *See Estate of La Meres v. Commissioner*, 98 T.C. 294, 318 (1992) ("[T]he Tax Court has consistently held that erroneous legal advice with respect to the date on which a return must be filed

can constitute reasonable cause for failure to file timely a return if such reliance was reasonable under the circumstances.").

This case aptly illustrates how such reliance upon expert advice can be objectively reasonable.  As we have noted, there was nothing immediately intuitive about the determination of these deadlines.  Instead, in order to ascertain when taxes needed to be paid and returns needed to be filed, the executors would have had first to identify the initial filing and payment deadlines and then navigated a series of extension rules, some of which are automatic and others of which are discretionary.  The executors would then have had to recognize that the interplay of these automatic and discretionary extension rules would lead to material differences in payment and filing deadlines.  The executors would also have to have been mindful of the fact that the application of some extension rules varies, depending upon their residency status.  Given the complexity of these rules it is hardly surprising that even experienced counsel may sometimes become confused.

Furthermore, although the United States insists that the Court should read *Boyle* to foreclose the plaintiffs from demonstrating reasonable cause under the undisputed facts of this case, we disagree.  As discussed, in *Boyle* the Supreme Court expressly declined to address the question of whether a taxpayer demonstrates "reasonable cause" when, in reliance upon the advice of counsel, the taxpayer files a return "after the actual due date but within the time the adviser

erroneously told him was available." 469 U.S. at 251 n.9. The Supreme Court flatly declined to address such a circumstance, while recognizing that numerous courts, including the United States Court of Appeals for the Third Circuit, had found that in such cases a taxpayer demonstrated reasonable cause for the untimely filing. *Id.* (citing cases, including *Sanderling, Inc. v. Commissioner*, 571 F.2d 174, 178-79 (3d Cir. 1978)). Given the Third Circuit's limited interpretation of *Boyle's* holding in *Thouron*, and the fact that the Supreme Court itself noted that its holding did not reach the very circumstances presented in this case, the Court disagrees that *Boyle* compels a ruling in the government's favor.

In reaching this result, we recognize that some other courts have interpreted *Boyle* in the manner urged by the United States, and on facts that are substantially similar to those presented in this case. *See, e.g., Knappe v. United States*, 713 F.3d 1164 (9th Cir. 2013); *West v. Koskinen*, 141 F. Supp. 3d 498 (E.D. Va. 2015). Were we writing upon a blank slate these cases might have persuasive power, but we do not write upon a blank slate. Quite the contrary, "[u]nder the 'allocation of authority established by the three-tier system of federal courts,' *Casey v. Planned Parenthood,* 14 F.3d 848, 856 (3d Cir.1994) (internal quotations omitted), this Court is obliged to follow Third Circuit precedent unless that precedent has been overruled by the court of appeals sitting in banc or by an opinion of the Supreme Court that overrules the precedent." *Loftus v. Se. Pennsylvania Transp. Auth.,* 843

F. Supp. 981, 984 (E.D. Pa. 1994).   Therefore, we are bound to follow the interpretive guidance that our court of appeals provided in *Thouron*, which carefully isolated the holding of *Boyle* and construed it to apply to first-category cases only, where executors have delegated entirely their obligations to prepare and file returns and make payment of taxes owed.   The Supreme Court has not yet held that in the second category of cases – where the executor relied upon the advice of tax counsel when filing a return after the actual deadline but within the period instructed by counsel – an executor may not demonstrate that such reliance was reasonable.   Furthermore, in *Sanderling*, the Third Circuit concluded that similar reliance may be reasonable.   571 F.2d 174, at 178-79.[5]

Moreover, the undisputed facts of this case indicate that the executors were endeavoring to exercise care in the administration of the estate, and relied upon the advice of counsel to aid them in that effort.   These facts reflect that the executors

---

[5]  We acknowledge that the continued authority of *Sanderling* and its relevance may be subject to some debate following *Boyle*.   *See West v. Koskinen*, 141 F. Supp. 3d 498, 503 n.12 (E.D. Va. 2015) (opining that *Sanderling* "is of doubtful authority" in the wake of the *Boyle* decision).   We are not free to engage in that debate, however, because it appears that *Sanderling* remains good law in this circuit, and we are therefore bound to follow it.   Furthermore, we decline to parse the holding of *Sanderling* in any manner which would effectively overrule that decision, since the Supreme Court specifically recognized *Sanderling* as an example of the kind of cases that involved reliance upon the advice of counsel regarding the deadline for filing a return that were not before the Supreme Court in *Boyle*, and the fact that the Third Circuit in *Thouron* recognized this as an area that *Boyle* left unsettled.   In short, since the Supreme Court, this nation's highest court, specifically declined to overrule *Sanderling* in *Boyle*, as an inferior court within the Third Circuit we are bound to faithfully apply *Sanderling* to the facts of this case.

applied for an extension of the payment and filing deadlines, in accordance with the advice of counsel.  This advice and the executors' reliance on it was eminently reasonable and prudent under the circumstances, where inexperienced executors were buffeted by and contending with intra-family disputes over asset valuations and other matters that hampered their ability to fulfill their legal obligations. Moreover, nothing in the record remotely suggests that the executors were cavalier in their attention to the tax rules, or were seeking to do anything other than ensure that the estate paid its taxes faithfully.  Indeed, the executors paid the estate taxes *before* they were due, and *overpaid* those taxes by $108,526.97.  In their letter accompanying the overpayment, the executors noted their understanding – which they obtained from counsel – that their return was not due to be filed for another several months, something that at the time was incorrect but was unknown to them. On July 2, 2013, the executors filed the estate's return on the deadline that counsel had instructed.

The record thus strongly supports the executors' assertion that they reasonably relied upon the advice of their legal counsel, and that they took the steps they reasonably believed were required of them to pay the estate's taxes and file its return in accordance with the law.  On these undisputed facts, we find that the executors exercised ordinary business care and prudence in relying upon their counsel's erroneous assertion that the deadline for filing the return and paying the

taxes owed had been extended for 12 months, and the Court is not persuaded that *Boyle* or other binding authority compel a contrary finding.

In reaching this conclusion, however, we wish to emphasize the very narrow scope of our ruling.  We do not purport to stake out new or novel legal theories in this decision.  Rather, we attempt to simply and faithfully apply the law of this circuit to the facts of this case.  Moreover, our decision regarding the reasonableness of the executors' reliance upon legal advice is strictly limited to, and bound up in the facts of this case.  Those facts reveal that the executors relied upon counsel, who were required to make a multi-faceted analysis of a series of rules regarding mandatory and discretionary deadlines.  These rules differed between payment and filing deadlines, and individual rules differed depending upon a number of variables, including the residence status of the executors. Further, while the executors received erroneous advice, they paid the taxes early, and in an amount that was more than $100,000 in excess of what was owed. Bound by *Thouron, Sanderling* and their progeny, we find that on these unique and uniquely compelling facts, the executors' reliance on professional advice was reasonable, and that they are entitled to summary judgment in this case.[6]

---

[6]We recognize an emerging disparity between the Third Circuit's interpretation of *Boyle*, and the construction given that decision by other courts.  We understand that the United States may have an institutional interest in clarifying this disparity and creating a uniform standard applicable to these cases.  To the extent that the United States believes that this case provides an appropriate factual vehicle for

## V.    CONCLUSION

Accordingly, for the reasons discussed above, the plaintiffs' motion for summary judgment will be granted, and the defendant's motion will be denied.  A separate order, consistent with this memorandum, will be filed separately.

*/s/ Martin C. Carlson*
United States Magistrate Judge

Dated: February 10, 2017

---

asking the appellate court to re-examine *Thouron* and *Sanderling*, it is of course entirely free to do so.